UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAHMEL BINION,

    Plaintiff,

v.

SHAQUILLE O'NEAL; ALFONSO
CLARK "TREY" BURKE, III; and
JUAQUIN MALPHURS a/k/a WAKA
FLOCKA FLAME,

    Defendants.
_____/

Case No. 14-13454
HON. AVERN COHN

## ORDER GRANTING TREY BURKE'S MOTION TO DISMISS (Doc. 3)

### I. INTRODUCTION

This is an invasion of privacy case. Jahmel Binion (Plaintiff) is suing Shaquille O'Neal (O'Neal), Alfonso Clark "Trey" Burke (Burke), and Juaquin Malphurs (Malphurs) (collectively, Defendants) claiming that Defendants posted mocking and ridiculing photographs of him on social media websites. The Complaint is in four counts:

    **COUNT I:**    Invasion of Privacy
    **COUNT II:**    Intentional Infliction of Emotional Distress
    **COUNT III:**    Defamation
    **COUNT IV:**    General Negligence

Now before the Court is Burke's Motion to Dismiss.[1] (Doc. 3) For the following reasons, Burke's motion is GRANTED.

### II. BACKGROUND

---

[1] Burke frames his motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and/or for summary judgment under Fed. R. Civ. P. 56. Because there has been no discovery, Burke's motion for summary judgment is premature. The Court considers Burke's motion as a motion to dismiss, based on the allegations in the Complaint, and as supplemented by statements during oral argument.

1

**A.**

Instagram is a social media website that describes itself as a "fun and quirky way to share your life with friends through a series of pictures." (*FAQ*, INSTAGRAM.COM, https://instagram.com/about/faq/ (last visited Mar. 5, 2015)) Every Instagram user is advised that "[a]ll photos are public by default which means they are visible to anyone using Instagram or on the instagram.com website." (*Id.*) However, Instagram allows users to "make [their] account private" such that "only people who follow [the user] on Instagram will be able to see [their] photos." (*Id.*) If the Instagram user fails to make his/her account private, "anyone can subscribe to follow [their] photos." (*Id.*)

Instagram's privacy policy states that "[b]y using our Service you understand and agree that we are providing a platform for you to post content, including photos, comments and other materials ("User Content"), to the Service and to share User Content publicly. This means that other Users may search for, see, use, or share any of your User Content that you make publicly available through the Service." (*Privacy Policy*, INSTAGRAM.COM, https://instagram.com/about/legal/privacy/ (last visited Mar. 5, 2015)) The privacy policy further states, "[a]ny information or content that you voluntarily disclose for posting to the Service, such as User Content, becomes available to the public, as controlled by any applicable privacy settings that you set. . . . Once you have shared User Content or made it public, that User Content may be re-shared by others." (*Id.*)

Like Instagram, Twitter is a social media website that allows users to post "Tweets," which are described as "an expression of a moment or idea. It can contain text, photos, and videos. Millions of Tweets are shared in real time, every day." (*The*

*Story of a Tweet: What Is a Tweet*, TWITTER.COM, https://about.twitter.com/what-is-twitter/story-of-a-tweet (last visited March 12, 2015)). As with Instagram, Twitter allows users to "share photos, in real time, with everyone or with the people [they] choose." (*So Much More than Words*, TWITTER.COM, https://about.twitter.com/products/photo-sharing (last visited March 12, 2015)). Twitter users can also "follow" other users, so that others' Tweets will appear in the user's Twitter feed. Finally, Twitter allows users to re-post or "Retweet" content from other users' Twitter feeds to be shared with their own followers. (*The Story of a Tweet: What Is a Tweet*, TWITTER.COM, https://about.twitter.com/what-is-twitter/story-of-a-tweet (last visited March 12, 2015)).

**B.**

Because the Court is responding to Burke's Motion to Dismiss, the facts alleged in the Complaint (Doc. 1-1) are accepted as true and are summarized below.

Plaintiff is an individual who resides in Macomb County, Michigan. Plaintiff suffers from a rare genetic condition called ectodermal dysplasia, which causes cosmetic abnormalities in the hair, nails, sweat glands, and teeth. Burke is a professional basketball player for the Utah Jazz, residing in Salt Lake City, Utah.

In April of 2014, when Plaintiff was approximately 23 years old, Plaintiff posted a number of photographs of himself on his public Instagram account. Shortly thereafter, Juaquin Malphurs obtained and reposted Plaintiff's photograph on his public Instagram account. Burke later obtained Plaintiff's photograph from Malphur's account and reposted it on his Instagram account with the caption, "Hacked by @IanClark." "IanClark" is the username of Ian Clark, close friend and teammate of Burke.

In moving to dismiss under Rule 12(b)(6), Burke argues that Plaintiff's Complaint

fails to state a claim upon which relief can be granted.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley*, 550 U.S.544, 545 (2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id*. at 678 (internal quotation marks and citation omitted).

### IV. DISCUSSION

This is a diversity case. Therefore, Michigan substantive law applies. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012). Burke argues that Plaintiff's claims must be dismissed for failure to state a claim under Michigan law.

### A. Invasion of Privacy

Under Michigan law, invasion of privacy torts are grouped into four categories: (1) "[i]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs"; (2) "[p]ublic disclosure of embarrassing private facts about the plaintiff"; (3) "[p]ublicity which places the plaintiff in a false light in the public eye"; (4) "[a]ppropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Beaumont v. Brown*, 401 Mich. 80, 108 (1977), *overruled on other grounds*, *Bradley v. Saranac Cmty. Sch. Bd. of Educ.*, 455 Mich. 285 (1997). Plaintiff's complaint sounds in all four causes of action.

### 1. Intrusion

"There are three necessary elements to establish a prima facie case of intrusion upon seclusion: (1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Doe v. Mills*, 212 Mich. App. 73, 88 (1995).

Burke says that the "information"—the photograph of Plaintiff—was obtained via the Instagram account of Malphurs, which was originally obtained from Plaintiff's public Instagram account. Burke argues that no reasonable person, particularly in the social media age, would find it objectionable to obtain and repost a photograph that someone had already posted publicly. This argument is persuasive and, furthermore, Plaintiff concedes this point in his response.

Therefore, Plaintiff cannot establish a prima facia case of intrusion upon seclusion.

### 2. Public Disclosure

5

Invasion of privacy by publicity involves the public disclosure of embarrassing private facts. *See Beaumont*, 401 Mich. at 95-96. "A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other." *Id.* at 105. "Embarrassing private facts" consist of information that concerns the plaintiff's private life. *Mills*, 212 Mich. App. at 82. The disclosed information must be "highly offensive to a reasonable person and of no legitimate concern to the public." *Sargent v. Barbara Ann Karmanos Cancer Institute*, 2003 WL 21359350 (E.D. Mich., Feb 7, 2003) (citation omitted).

Here, Burke argues that the Complaint fails to make clear what "embarrassing private facts" were publicly disclosed. Indeed, the only "fact" publicized was the photograph of Plaintiff, which had already been posted publicly by Plaintiff and reposted by Malphurs and others. Plaintiff says that Burke's posting revealed private information relating to his medical condition—namely, that he suffers from ectodermal dysplasia. However, Burke's posting did not state that Plaintiff suffered from any particular medical condition. Finally, Plaintiff had already posted his photograph publicly on his public Instagram account. Therefore, his photograph is not "private." *See Doe v. Peterson*, 784 F. Supp. 2d 831, 841 (E.D. Mich. 2011) (granting summary judgment on public disclosure claims because images of plaintiff had already been posted on at least one other website, and therefore were not private facts).

Therefore, Plaintiff cannot establish a prima facia case of public disclosure.

### 3. False Light

False light entails the publication of false information regarding the plaintiff, resulting in damage. The cause of action requires the plaintiff to allege that publication

6

"attribut[ed] to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Duran v. The Detroit News*, 200 Mich. App. 622, 632 (1993). The two necessary elements to make out a false light claim are (1) publicity and (2) placement of the plaintiff in a false light in the public eye. *Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich. App. 583, 591 (1984). The defendant "must have had knowledge of or acted in a reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Duran*, 200 Mich. App. at 632.

Here, Burke says that Plaintiff cannot show how the reposting of his photographs placed him in a false light in the public eye—especially when Plaintiff had voluntarily posted the photographs on his public Instagram account. Plaintiff states that, "[f]rom the nature of the pictures posted, one could reasonably infer that the defendants sought to portray [him] as a moron." (Doc. 5 at 13) However, Burke did nothing to alter the photograph and made no statements regarding the photograph, Plaintiff, or his medical condition. Courts have held that publication of true-likeness photographs do not constitute "information that [is] unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that [are] false and place[] the plaintiff in a false position." *Rhoads v. Baker Coll.*, No. 280150, 2008 WL 4648972, at *6 (Mich. Ct. App. Oct. 21, 2008) (citing *Duran*, 200 Mich. App. at 631-32).

Therefore, Plaintiff cannot establish a prima facia case of false light.

### 4. Appropriation

Invasion of privacy through appropriation occurs when a person uses another's name or likeness without permission, to their own pecuniary benefit. Restatement (Second) of Torts, § 652C.

Here, there is no allegation that Burke posted the photograph of Plaintiff for his pecuniary advantage, or that Burke in any way profited from posting the photograph. Although Plaintiff says that Burke "is actively seeking to grow his brand" through self-promotion (Doc. 5 at 15), Plaintiff has failed to demonstrate how posting pictures of him would result in Burke's pecuniary benefit. Nor can Plaintiff establish that there is a "pecuniary interest or significant commercial value in [his] identity," such that would result in profit to Burke. *Armstrong v. Eagle Rock Entm't, Inc.*, 655 F. Supp.2d 779, 785 (E.D. Mich. 2009).

Therefore, Plaintiff cannot establish a prima facia case of appropriation.

### B. Intentional Infliction of Emotional Distress

An intentional infliction of emotional distress (IIED) claim requires "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Duran*, 622 Mich. App at 629-30. Conduct is not considered "extreme and outrageous" if it is merely insulting. Rather, the defendant's conduct must be "so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Grochowalski v. DAIIE*, 171 Mich. App. 771, 775-76 (1988). A defendant is not liable for "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Mills*, 212 Mich. App. at 91.

Here, Burke says that Plaintiff cannot demonstrate that Burke's conduct was sufficiently extreme and outrageous to establish prima facie case. Burke says that he merely shared a photograph that had already been posted on Plaintiff's public account and reposted on Malphurs' account, and that he made no comment related to the

8

photograph, Plaintiff, or his medical condition. Finally, Burke says that even if one could infer that Burke was indirectly mocking Plaintiff's appearance, the law is clear that "mere insults" are insufficient to establish an IIED claim.

Burke's arguments have merit. Although the widespread distribution of Burkes post can certainly make the offensive nature of his postings more acute, given the fact that Plaintiff's pictures were already publicly available on social media websites, Burke's conduct does not rise to a level than be considered "beyond all possible bounds of decency" or "atrocious and utterly intolerable." Further, although Plaintiff argues that there should be discovery as to the degree of emotional stress suffered by Plaintiff, he is otherwise unable to show that Burke's conduct was sufficiently extreme and outrageous. Plaintiff therefore has failed to establish a prima facia case of intentional infliction of emotional distress.

### C. Defamation

To establish defamation, Plaintiff must allege (1) "a false and defamatory statement concerning the plaintiff"; (2) "an unprivileged publication to a third party"; (3) "fault amounting to at least negligence on the part of the publisher"; and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Rouch v. Enquirer & News*, 440 Mich. 238, 251 (1992). Where there is no evidence of a false *statement*, Michigan recognizes a cause of action for defamation by implication, but only if the plaintiff proves that the defamatory *implications* are materially false. *Hawkins v. Mercy Health Servs.*, Inc., 230 Mich. App. 315, 329-30 (1998). Even when defamation takes place by implication, a plaintiff must

9

plead with specificity the statements that form the basis of the defamatory implication. *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich. App. 48, 57 (1992). Further, for a statement to be defamatory, it must capable of interpretation by a reasonable listener as stating "actual facts" about the plaintiff, as opposed to statements of opinion.  *Ireland v. Edwards*, 230 Mich. App. 607, 617 (1998) (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-17 (1990)).

Here, the Complaint alleges no single statement to Burke. Instead, Plaintiff contends that the photograph posted by Burke implies that Plaintiff is mentally handicapped, or that his appearance makes him worthy of ridicule. Neither argument has merit.

At most, Burke posted a true and accurate photograph of Plaintiff—the same photograph that Plaintiff posted on his public Instagram account. Plaintiff cannot identify with specificity any statements attributable to Burke that definitively create this implication. Nor does Plaintiff argue that the caption "Hacked by @IanClark" implies that Plaintiff is handicapped. Although Plaintiff cites authority for the proposition that a photograph can create the implication that a person is mentally handicapped, the case cited is distinguishable because the photograph was posted with the caption, "Help for the Mentally Retarded." *See Brauer v. Globe Newspaper Co.*, 351 Mass. 53, 55 (1966).

Even if Burke was suggesting that Plaintiff's appearance makes him worthy of ridicule, this would not be sufficient to make out a defamation claim. Michigan courts have held that insults and other derogatory comments on "Internet message boards and similar communication platforms" are best regarded as "statements of pure opinion,

rather than statement or implications of actual, provable fact." *Ghanam v. Does*, 303 Mich. App. 522, 547 (2014). Finally, although Plaintiff argues that there should be discovery as to Burke's degree of negligence, Plaintiff is otherwise unable to show that Burke's posted a false and defamatory statement.

Plaintiff therefore has failed to establish a prima facia case of defamation.

### D. General Negligence

To establish a prima facie case of negligence, a plaintiff must prove the following four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). "A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Maiden v. Rozwood*, 461 Mich. 109, 131 (1999) (citation omitted). To determine whether the relationship between the parties is sufficient to create a legal duty, a court must consider "whether the defendant is under any obligation for the benefit of the particular plaintiff . . . ." *Id.* at 132 (citations and internal quotation omitted). Another important consideration in whether a defendant owes a duty is "whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Moning v. Alfono*, 400 Mich. 425, 439 (1977).

Burke argues that Plaintiff has not sufficiently alleged a legal duty that exists between them, other than "the general duty to conform to the legal standard of reasonable conduct in the light of the apparent risk." (Doc. 1-1 at 6). Burke further says that his relationship with Plaintiff is no different than with the millions of other Instagram

11

users who post photographs that can be shared, reposted, and commented on.

In response, Plaintiff argues that when posting mocking photographs of a stranger to a large audience, it is foreseeable that an emotional harm will result. However, Plaintiff cites no case law in support of his theory that social media users owe any particular duty to the person whose photographs they repost, or that any emotional harm is a foreseeable consequence. Further, Plaintiff did not allege the negligent infliction of emotional distress[2] and provides no support that emotional harms are recoverable under traditional negligence theory.

Plaintiff's general negligence claim therefore cannot prevail.

### V. CONCLUSION

For the above reasons, Burke's Motion to Dismiss has been granted. Plaintiff's claims against Burke are therefore DISMISSED. [3]

SO ORDERED.

                                                s/Avern Cohn
                                                UNITED STATES DISTRICT JUDGE

DATED: April 2, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 2, 2015, by electronic and/or ordinary mail.

                                                s/Sakne Chami
                                                Case Manager, (313) 234-5160

---

[2] Even if Plaintiff had alleged negligent infliction of emotional distress, this cause of action requires some actual physical harm. *See Taylor v. Kurapati*, 236 Mich. App. 315, 360 (1999). Here, Plaintiff alleges no such harm.

[3] The Court dismissed the claims against O'Neal in a separate order. However, Plaintiff's claims against Malphurs are still pending. Because Malphurs failed to plead or otherwise defend, the Clerk of the Court filed an Entry of Default on January 7, 2015