UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAHMEL BINION,

      Plaintiff,

v.                                                              Case No. 14-13454
                                                                HON. AVERN COHN

SHAQUILLE O'NEAL; ALFONSO
CLARK "TREY" BURKE, III; and
JUAQUIN MALPHURS a/k/a WAKA
FLOCKA FLAME,

      Defendants.
_____/

## ORDER GRANTING SHAQUILLE O'NEAL'S MOTION TO DISMISS (Doc. 15)

### I. INTRODUCTION

This is an invasion of privacy case.  Jahmel Binion (Plaintiff) is suing Shaquille O'Neal (O'Neal), Alfonso Clark "Trey" Burke (Burke), and Juaquin Malphurs (Malphurs) (collectively, Defendants) claiming that Defendants posted mocking and ridiculing photographs of him on social media websites.  The Complaint is in four counts:

**COUNT I:**      Invasion of Privacy
**COUNT II:**     Intentional Infliction of Emotional Distress
**COUNT III:**    Defamation
**COUNT IV:**    General Negligence

Now before the Court is O'Neal's Motion to Dismiss.  (Doc. 15)  In moving to dismiss under Rule 12(b)(2), O'Neal says that he is not subject to personal jurisdiction in Michigan by merely posting images of Plaintiff on his Instagram and Twitter accounts. For the following reasons, O'Neal's motion is GRANTED.

### II. BACKGROUND

1

**A.**

Instagram is a social media website that describes itself as a "fun and quirky way to share your life with friends through a series of pictures." (*FAQ*, INSTAGRAM.COM, https://instagram.com/about/faq/ (last visited Mar. 5, 2015))  Every Instagram user is advised that "[a]ll photos are public by default which means they are visible to anyone using Instagram or on the instagram.com website." (*Id.*)  However, Instagram allows users to "make [their] account private" such that "only people who follow [the user] on Instagram will be able to see [their] photos." (*Id.*)  If the Instagram user fails to make his/her account private, "anyone can subscribe to follow [their] photos." (*Id.*)

Instagram's privacy policy states that "[b]y using our Service you understand and agree that we are providing a platform for you to post content, including photos, comments and other materials ("User Content"), to the Service and to share User Content publicly.  This means that other Users may search for, see, use, or share any of your User Content that you make publicly available through the Service." (*Privacy Policy*, INSTAGRAM.COM, https://instagram.com/about/legal/privacy/ (last visited Mar. 5, 2015))  The privacy policy further states, "[a]ny information or content that you voluntarily disclose for posting to the Service, such as User Content, becomes available to the public, as controlled by any applicable privacy settings that you set. . . . Once you have shared User Content or made it public, that User Content may be re-shared by others." (*Id.*)

Like Instagram, Twitter is a social media website that allows users to post "Tweets," which are described as "an expression of a moment or idea.  It can contain text, photos, and videos.  Millions of Tweets are shared in real time, every day." (*The*

*Story of a Tweet: What Is a Tweet*, TWITTER.COM, https://about.twitter.com/what-is-twitter/story-of-a-tweet (last visited March 12, 2015)).  As with Instagram, Twitter allows users to "share photos, in real time, with everyone or with the people [they] choose." (*So Much More than Words*, TWITTER.COM, https://about.twitter.com/products/photo-sharing (last visited March 12, 2015)).  Twitter users can also "follow" other users, so that others' Tweets will appear in the user's Twitter feed.  Finally, Twitter allows users to re-post or "Retweet" content from other users' Twitter feeds to be shared with their own followers.  (*The Story of a Tweet: What Is a Tweet*, TWITTER.COM, https://about.twitter.com/what-is-twitter/story-of-a-tweet (last visited March 12, 2015)).

**B.**

Because the Court is responding to O'Neal's Motion to Dismiss, the facts alleged in the Complaint (Doc. 1-1) are accepted as true and are summarized below.

Plaintiff is an individual who resides in Macomb County, Michigan.  Plaintiff suffers from a rare genetic condition called ectodermal dysplasia, which causes cosmetic abnormalities in the hair, nails, sweat glands, and teeth.  O'Neal is a former professional basketball player residing in Florida and Massachusetts.

In April of 2014, when Plaintiff was approximately 23 years old, Plaintiff posted a number of photographs of himself on his public Instagram account.  O'Neal obtained a photograph of Plaintiff and posted it on his Instagram and Twitter accounts, side-by-side with a photograph of O'Neal mockingly contorting his face to look like Plaintiff's.  O'Neal has an estimated half-million Instagram followers and 8.46 million Twitter followers.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) tests

3

the court's personal jurisdiction over the defendant. The plaintiff bears the burden of establishing that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Sixth Circuit has clearly outlined the procedure for determining personal jurisdiction in Fed. R. Civ. P. 12(b)(2) challenges. *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998). When considering a motion under Rule 12(b)(2), a court has three choices: (1) rule on the motion based on the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean*, 134 F.3d at 1272. When a court rules on a 12(b)(2) motion to dismiss without an evidentiary hearing, the complaint and affidavits are considered in a light most favorable to the plaintiff. *Id.*

## IV. DISCUSSION

O'Neal says that the Complaint must be dismissed because the Court cannot assert personal jurisdiction over him.

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp.*, 282 F.3d at 888 (citation omitted). In this case, Plaintiff is not invoking general jurisdiction under Michigan's general jurisdiction statute, M.C.L. § 600.711, but limited jurisdiction under Michigan's "Long Arm" statute, M.C.L. § 600.705. Michigan's limited jurisdiction provisions permit the exercise of jurisdiction to the extent limited by due process requirements; thus, "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine

4

whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

The court's jurisdiction comports with due process "when defendant has sufficient minimum contacts such that traditional notions of fair play and substantial justice are not offended." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The Sixth Circuit uses a three-part test in determining whether, consistent with due process, a court may exercise limited personal jurisdiction: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence to occur there; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over him reasonable. *So. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). There is an inference that the exercise of jurisdiction is reasonable where the first two elements have been satisfied. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

To establish purposeful availment, the defendant must perform some act whereby the defendant purposefully avails himself of the privilege of doing business in the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). There must be a substantial connection between the defendant's conduct and the state such that the defendant "should reasonably anticipate being hauled into court there." *Id.* at 474. As the Supreme Court recently stated, "[t]he principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2783 (2011).

5

In a tort case related to defamatory content posted on an internet website, courts in the Sixth Circuit have used two different tests to determine if purposeful availment has been established.  First, the "*Zippo* test" considers how interactive the website is with the people in the forum state.  *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  Second, the "*Calder* test" considers whether the "effects" of the defendant's intentional tortious conduct, which the defendant could expect to be felt in the forum state, was sufficient for the forum's courts to exercise jurisdiction over him.  *Lifestyle Lift Holding Co. v. Prendiville*, 768 F. Supp. 2d 929, 937 (E.D. Mich. 2011).

## A. The *Zippo* Test

Under the *Zippo* test, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state."  *Neogen Corp.*, 282 F.3d at 890.

> On one end of the spectrum are situations where a defendant clearly does business over the internet (i.e., enters into contracts with residents of forum state that involve the knowing and repeated transmission of computer files over internet).  Under these circumstances, jurisdiction is proper.  At the other end of the spectrum are those situations where the defendant simply posted information on a web site that is accessible to users in the forum state.  However, such passive web sites are not grounds for jurisdiction.  In the middle are those web sites that permit a user to exchange information with the host computer.  In these situations, a court must consider the level of interactivity and the commercial nature of the information exchange.

*Hyperbaric Options, LLC v. Oxy-Health, LLC*, No. 12-12020, 2013 WL 5449959, at *5 (E.D. Mich. Sept. 30, 2013) (citing *Zippo*, 952 F. Supp. at 1124).

Courts in this Circuit have held that social media websites "do not lend themselves" to the *Zippo* test because the defendants do not own or operate the

6

websites, but is merely a visitor or an account holder; in addition, the websites are generally not used primarily to conduct business. *See, e.g.*, *Hyperbaric Options*, 2013 WL 5449959, at *6. Other courts have applied the *Zippo* test to social media websites and held that personal jurisdiction is not established by merely posting content on websites such as Facebook: although "slightly more interactive" because of the ability to "like," share, or comment on postings, the site "lack[s] a commercial nature, and additional interactivity [is] absent." *Thomas v. Barrett*, No. 1:12-CV-00074, 2012 WL 2952188, at *4 (W.D. Mich. July 19, 2012).

A similar result is necessary here. Although highly offensive, O'Neal's posts on Instagram and Twitter were little more than the posting of information on social media websites, which became accessible to users in Michigan and elsewhere. The websites are not owned or operated by O'Neal, were minimally interactive, and the postings were not intended to conduct business.

### B. The *Calder* "Effects" Test

Under the *Calder* "effects" test, a plaintiff must establish "(1) the defendant intentionally committed a tortious action which was expressly aimed for dissemination in the forum state, and (2) the brunt of the effects of the actions are felt within the forum state." *Hyperbaric Options*, 2013 WL 5449959, at *6 (citing *Lifestyle Lift Holding Co.*, 768 F. Supp. 2d at 937). However, "injury to a forum resident is not enough, and the *Calder* test has not been read to authorize personal jurisdiction in a plaintiff's home forum in the absence of 'something more' to demonstrate that the defendant directed this activity toward the forum state." *Id.* at *7 (citing *Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*, 688 F.Supp.2d 693, 700 (E.D. Mich. 2009)).

Here, Plaintiff cannot establish that O'Neal's posts were "expressly aimed for dissemination" in Michigan.  Nor is there any allegation that O'Neal took affirmative steps to direct the posts to a Michigan audience.  Instead, O'Neal's posts were meant for a national or even international audience.  Here, the only connection to Michigan is Plaintiff's injury.  This, without "something more" is insufficient to establish personal jurisdiction over O'Neal under the "effects" test.

### C. Plaintiff's Arguments in Opposition

In response, Plaintiff says that O'Neal has several business contacts in Michigan that render him subject to personal jurisdiction in the state.  Plaintiff says that O'Neal has organized comedy performances at local theaters, owns restaurant franchises and other business interests in Michigan, and endorses or has endorsed many products that are distributed in Michigan.  Plaintiff also says that O'Neal's posts were part of his multi-media campaign to promote his own brand image.  Plaintiff suggests that such questions should survive O'Neal's motion to dismiss and proceed to jurisdiction-related discovery.

These arguments are unavailing.  Although O'Neal may have several business connections to Michigan, Plaintiff cannot show that his cause of action arises from O'Neal's activities here.  Plaintiff was not injured by O'Neal's business dealings in the state, and Plaintiff's cause of action is independent of any such business connection.

Therefore, Plaintiff has not established a sufficient factual basis to support the exercise of personal jurisdiction over O'Neal.

8

## V. CONCLUSION

For the above reasons, O'Neal's Motion to Dismiss has been granted.  Plaintiff's

case against O'Neal is therefore DISMISSED.[1]

SO ORDERED.

s/Avern Cohn
UNITED STATES DISTRICT JUDGE

DATED:  April 2, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, April 2, 2015, by electronic and/or ordinary mail.

s/Sakne Chami
Case Manager, (313) 234-5160

---

[1]     The Court dismissed the claims against Burke in a separate order.  However,
Plaintiff's claims against Malphurs are still pending.  Because Malphurs failed to plead
or otherwise defend, the Clerk of the Court filed an Entry of Default on January 7, 2015.